# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CITRIX SYSTEMS, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>PARALLEL NETWORKS LICENSING, LLC,<br><br>    Defendant. | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR DECLARATORY JUDGMENT

Citrix Systems, Inc. ("Citrix") brings this action for a declaratory judgment of non-infringement against Parallel Networks Licensing, LLC ("Parallel Networks Licensing"), a Delaware-based entity whose sole business appears to be the assertion of patent infringement claims.

## NATURE OF THE ACTION

1.  This is an action for a declaratory judgment of non-infringement arising under the patent laws of the United States, Title 35 of the United States Code.

2.  Founded in 1989, Citrix is a pioneer and leader in the field of application and desktop virtualization, networking, Software-as-a-Service (SaaS), and cloud computing technologies. Citrix's technology provides the industry's most comprehensive and integrated platform for secure application and data delivery and network functionality through technology leadership in application virtualization, virtual desktop infrastructure (VDI), mobility, business file synchronization and sharing, networking, and cloud computing. Citrix's products and

1

services are provided to customers of all sizes, from small businesses to large global enterprises, including over 90% of Fortune 500 companies.

3. Citrix's networking products allow organizations to deliver apps and data with the security, reliability, and speed trusted by thousands of customers worldwide. For example, Citrix ADC (formerly NetScaler ADC) is an application delivery controller (ADC) and load balancer designed to improve application performance and reliability for mobile, remote, and branch users; allow customers to transition their infrastructure to an app-driven, software-defined network; eliminate multiple remote access solutions for improved security; and consolidate data centers for greater efficiency.

4. In the late 1990s, NetScaler, Inc. began developing a technology ("the NetScaler technology") which included techniques to efficiently pool, multiplex, and reuse network connections between clients and servers over the Internet. Such pooling, multiplexing, and reuse improve the processing capacity of servers. This improvement translates into faster responses to client requests, *e.g.*, faster downloads, and more client requests being handled by the same server. Citrix acquired NetScaler, Inc. in August 2005, and the NetScaler technology has been part of the Citrix portfolio of products and services since that time.

5. Citrix's efforts in developing the NetScaler technology have resulted in the issuance of numerous United States patents. In total, Citrix's intellectual property portfolio includes over 1300 issued patents in the United States and over 2500 issued patents worldwide.

6. The broad adoption of Citrix's networking technology, including the NetScaler technology, in the United States and worldwide, and Citrix's investment in that technology, has resulted in substantial growth for Citrix.

7. Parallel Networks Licensing, on the other hand, is a patent assertion entity formed for the sole purpose of generating revenue by asserting patents against other companies' products.

8. For example, Parallel Networks, LLC, on information and belief the predecessor company of Parallel Networks Licensing and the assignor of patents currently owned by Parallel Networks Licensing, filed a lawsuit against Citrix in this District claiming Citrix infringed two Parallel Networks, LLC patents.

9. Additionally, just in the past few months, Parallel Networks Licensing filed two lawsuits against Citrix's customers claiming infringement of United States Patent Nos. 5,894,554 ("the '554 patent") and 6,415,335 ("the '335 patent") (collectively "the Asserted Patents").

10. Parallel Networks Licensing has claimed in the recent lawsuits filed against Citrix's customers that certain Citrix products infringe the Asserted Patents. However, Citrix's products do not infringe the Asserted Patents, as detailed in the allegations below.

11. Parallel Networks Licensing's prior actions and statements have created a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of non-infringement as to whether Citrix products practice the Asserted Patents.

12. This Court should not allow the threat of a future lawsuit to harm and cause uncertainty to Citrix's business.

13. Therefore, there is and remains a substantial controversy between Citrix and Parallel Networks Licensing of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of non-infringement. Citrix accordingly brings this action to obtain a declaratory judgment that Citrix ADC (formerly known as NetScaler ADC) products ("the

Accused Products") do not infringe at least the claims of the Asserted Patents identified below literally or under the doctrine of equivalents.

## THE PARTIES

14.     Plaintiff Citrix is a Delaware corporation with a principal place of business at 851 West Cypress Creek Road, Fort Lauderdale, Florida.

15.     On information and belief, defendant Parallel Networks Licensing is a Delaware limited liability company with a place of business at 17440 North Dallas Parkway, Suite 230, Dallas, Texas 75287.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action involves claims arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, and under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

17.     Personal jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and/or 1400, because, on information and belief, Parallel Networks Licensing is organized under the laws of Delaware and because Parallel Networks Licensing has directed acts to this District, including acts pertaining to the Asserted Patents.  Parallel Networks Licensing's business is the assertion of patent infringement claims, and Parallel Networks Licensing has conducted this business within Delaware, including by filing patent infringement lawsuits involving the Asserted Patents against Microsoft Corporation and International Business Machines Corporation in this District.  For these reasons and for those stated below, Parallel Networks Licensing has, and has had, continuous and systematic contacts within the State of Delaware, and has purposefully directed business activities into and in this District.

18. This Court has personal jurisdiction over Parallel Networks Licensing and venue is proper in this District. Parallel Networks Licensing has purposefully availed itself of the benefits of Delaware law by organizing as a Limited Liability Company under Delaware law, and has more than sufficient minimum contacts with Delaware, including within this District, such that this declaratory judgment action meets the requirements of Delaware's long-arm statute.

19. Venue is appropriate in this District. Citrix is a Delaware Corporation and Parallel Networks Licensing is a Limited Liability Company organized under Delaware law.

20. For these reasons and the reasons set forth below, a substantial controversy exists between the parties which is of sufficient immediacy and reality to warrant declaratory relief.

## THE ACCUSED CITRIX PRODUCTS

21. In the late 1990s, NetScaler, Inc. began developing the NetScaler technology, which included techniques to efficiently pool, multiplex, and reuse network connections between clients and servers over the Internet. Such pooling, multiplexing, and reuse improve the processing capacity and reliability of servers. This improvement translates into faster responses to client requests, *e.g.*, faster downloads, and the capability for the same server to service a greater number of client requests within a particular period of time. Citrix acquired NetScaler, Inc. in August 2005, and the NetScaler technology has been part of the Citrix portfolio of products since that time. Citrix's efforts in developing this networking technology, including the Accused Products, have resulted in the issuance of numerous United States patents in the area of computer networking.

## THE PARALLEL NETWORKS LICENSING PATENTS

22. The '554 patent, titled "System for Managing Dynamic Web Page Generation Requests by Intercepting Request at Web Server and Routing to Page Server Thereby Releasing Web Server to Process Other Requests," was issued by the U.S. Patent and Trademark Office on April 13, 1999.  A copy of the '554 patent is attached as Exhibit A.  The '554 patent expired on April 23, 2016.

23. Parallel Networks Licensing purports to be the owner of the rights, title, and interest in the '554 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of said patent.

24. The '335 patent, titled "System and Method for Managing Dynamic Web Page Generation Requests," was issued by the U.S. Patent and Trademark Office on July 2, 2002.  A copy of the '335 patent is attached as Exhibit B.  The '335 patent issued from a divisional application of the '554 patent and, just like the '554 patent, the '335 patent expired on April 23, 2016.

25. Parallel Networks Licensing purports to be the owner of the rights, title, and interest in the '335 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of said patent.

## PARALLEL NETWORKS LICENSING'S
## PAST AND PRESENT INFRINGEMENT LAWSUITS

26. Parallel Networks Licensing has an extensive history of litigating its patents, including the Asserted Patents.  On information and belief, since 2005, the Asserted Patents have been asserted against more than 30 companies including, most recently, in two lawsuits filed against Citrix customers.

27. Prior to December 5, 2013, the assignee of the Asserted Patents and the named plaintiff in the litigations involving the Asserted Patents was Parallel Networks, LLC. On December 5, 2013, Parallel Networks, LLC assigned the Asserted Patents to Parallel Networks Licensing.

28. On July 3, 2019, Parallel Networks Licensing filed a patent infringement complaint in the U.S. District Court for the Eastern District of Texas against RamQuest, Inc. and RamQuest Software, Inc. (collectively, "RamQuest"). The case was assigned Civil Action No. 4:19-cv-00487 and is presently pending. The complaint accuses RamQuest of infringing at least claim 12 of the '554 patent and claim 43 of the '335 patent. A copy of the complaint against RamQuest is attached as Exhibit C.

29. RamQuest is a customer of Citrix's products including, in particular, the Accused Products.

30. On July 12, 2019, Parallel Networks Licensing filed a patent infringement complaint in the U.S. District Court for the Eastern District of Texas, against Superior Turnkey Solutions Group, Inc. ("Superior Turnkey"). The case was assigned Civil Action No. 4:19-cv-00516 and is presently pending. As with the complaint against RamQuest, the complaint accuses Superior Turnkey of infringing at least claim 12 of the '554 patent and claim 43 of the '335 patent. A copy of the complaint against Superior Turnkey is attached as Exhibit D.

31. Superior Turnkey is a customer and reseller of Citrix's products including, in particular, the Accused Products.

## THE PARALLEL NETWORKS LICENSING INFRINGEMENT LAWSUITS GIVE RISE TO AN IMMEDIATE, ACTUAL, AND SUBSTANTIAL CONTROVERSY AS TO WHETHER CITRIX INFRINGES THE ASSERTED PATENTS

32. Parallel Networks Licensing's patent infringement allegations, as set forth in its complaints against RamQuest and Superior Turnkey, give rise to an immediate, actual, and substantial controversy between Parallel Networks Licensing and Citrix, at least because the allegations now cause Citrix to have a reasonable apprehension that Parallel Networks Licensing will accuse Citrix of infringing one or more claims of the Asserted Patents.

33. In Parallel Networks Licensing's complaints against RamQuest and Superior Turnkey (the "Complaints"), Parallel Networks Licensing accuses each defendant of infringing the Asserted Patents by using "Citrix's NetScaler, Citrix NetScaler, and/or Citrix ADC products, or by use of a web server in conjunction with the same." (Exs. C, D at ¶¶ 28, 43.)

34. The Complaints further allege that RamQuest and Superior Turnkey infringe the Asserted Patents "by using, and/or providing and causing to be used products, specifically one or more servers that may load-balance among other servers, which by way of example, include each defendant's use of Citrix's NetScaler, Citrix NetScaler, and/or Citrix ADC products, or the use of a webserver in conjunction with the same." (Exs. C, D at ¶¶ 28, 42.)

35. In setting forth its infringement allegations in the Complaints, Parallel Networks Licensing refers extensively to the online version of two Citrix NetScaler manuals: "NetScaler 12.0" (excerpts attached as Exhibit E) and "Release Notes" for NetScaler 10.0 (excerpts attached as Exhibit F). (Exs. C, D at ¶¶ 30, 32, 37, 45.) Both of these manuals instruct system and network administrators on how to install, set up, and use the Accused Products with networks and servers.

36. Thus, for example, Parallel Networks Licensing's infringement allegations with respect to the '554 patent in the Complaint include figures from the Citrix NetScaler 12.0 manual. Parallel Networks Licensing cites the manual for its alleged teaching of a deployment of servers to perform "load balancing among servers in a server farm, as well as among Citrix XenApp or XenDesktop servers":



(Exs. C, D at ¶ 30.)

37. In setting forth its infringement allegations with respect to the '554 patent, Parallel Networks Licensing also cites to the NetScaler 10 Release Notes for the allegation that NetScaler meets the "dispatching" element of claim 12 of the '554 patent:

9

37. This dispatching element is satisfied by the use of Citrix's NetScaler, Citrix NetScaler, and/or Citrix ADC products, as they examine requests to make selections of page servers—each of which is capable of generating the Web page—based on information regarding the load associated with each page server. For example, NetScaler dispatches a request to an appropriate page server based on examining the dynamic information regarding the load associated with each of the page servers—one non-limiting example of such information being which page server has the least amount of active connections:



Source: https://docs.citrix.com/en-us/categories/legacy-archive/downloads/netscaler-10.pdf at page 463-464 of 5752.

(Exs. C, D at ¶ 37.)

38. In both Complaints, Parallel Networks Licensing also cites to the NetScaler 10 Release Notes in support of its allegation that the Citrix manual teaches a server load-balancing setup that "transfers a request from a HTTP-compliant device, and selects a page server to release the HTTP-compliant device from the request to process it," as required by the '335 patent:

45. In using this method, as demonstrated in the diagram below, the Accused Instrumentalities transfers a request from a HTTP-compliant device, and selects a page server to release the HTTP-compliant device from that request to process it.



Source: https://docs.citrix.com/en-us/categories/legacy-archive/downloads/netscaler-10.pdf at page 463 of 5752.

(Exs. C, D at ¶¶ 45.)

39. In sum, Parallel Networks Licensing alleges that RamQuest and Superior Turnkey directly infringe the Asserted Patents by using Citrix's Accused Products. Indeed, Parallel Networks Licensing refers to the Accused Products, or the use of a web server in conjunction with the same, as the "Accused Instrumentalities." (Exs. C, D at ¶¶ 28.) Parallel Networks Licensing's allegations are based upon citations and references to Citrix's manuals that describe the alleged operation of the Accused Products.

40. In particular, Parallel Networks Licensing specifically alleges in the Complaints that Citrix provides its customers with the necessary components to infringe the Asserted Patents. Parallel Networks Licensing also alleges in the Complaints that Citrix provides its

customers with instructions to use the Accused Products in a manner which allegedly infringes the Asserted Patents.

41. Based on the citations to, and heavy reliance on, Citrix's manuals, coupled with the allegations that Citrix's customers are directly infringing the Asserted Patents because of their use of the Citrix Accused Products in accordance with such manuals, the Complaints are read by Citrix to allege that Citrix is at least inducing and contributing to the infringement of the Asserted Patents by its customers.

42. As a result, Citrix reasonably apprehends that Parallel Networks Licensing will directly accuse Citrix of infringing the Asserted Patents.

43. The allegations in the Complaints therefore create an immediate, actual, and substantial controversy between Parallel Networks Licensing and Citrix as to Citrix's liability for patent infringement.

## COUNT I
### (Non-Infringement of the '554 Patent)

44. Citrix incorporates by reference all the above paragraphs, as if set forth fully herein.

45. By virtue of Parallel Networks Licensing's patent infringement allegations set forth in the Complaints, an actual, immediate, and substantial controversy exists between Citrix and Parallel Networks Licensing as to whether Citrix infringed at least claim 12 of the '554 patent.

46. Citrix did not infringe, whether literally or under the doctrine of equivalents, claim 12 of the '554 patent or any other claim of the '554 patent, including through its making, use, sale or offer for sale in, or importation into the United States of the Accused Products.

47. For example, none of the Accused Products referenced in the Parallel Networks Licensing Complaints perform, or have performed, a computer-implemented method for managing a dynamic Web page generation request to a Web server that includes the step of "routing said request from said Web server to a selected page server, said selected page server receiving said request and releasing said Web server to process other requests, wherein said routing step further includes the steps of intercepting said request at said Web server, routing said request from said Web server to a dispatcher, and dispatching, by said dispatcher, said request to said selected page server," a necessary limitation of claim 12.

48. Accordingly, at least for the above reasons, the Citrix Accused Products did not infringe at least claim 12 of the '554 patent, either literally or under the doctrine of equivalents.

49. Citrix also did not contribute to or induce infringement of the '554 patent or otherwise indirectly infringe the '554 patent for at least the reasons stated above and because there is no direct infringement of the '554 patent, either literally or under the doctrine of equivalents.

50. As set forth above, an actual controversy exists between Citrix and Parallel Networks Licensing with respect to alleged infringement of the '554 patent, and this controversy is likely to continue. Accordingly, Citrix desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '554 patent.

51. Pursuant at least to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to Citrix's non-infringement of the '554 patent is necessary and appropriate.

## COUNT II
### (Non-Infringement of the '335 Patent)

52. Citrix incorporates by reference all the above paragraphs, as if set forth fully herein.

53. By virtue of Parallel Networks Licensing's patent infringement allegations set forth in the Complaints, an actual, immediate, and substantial controversy exists between Citrix and Parallel Networks Licensing as to whether Citrix infringed at least claim 43 of the '335 patent.

54. Citrix did not infringe, whether literally or under the doctrine of equivalents, claim 43 of the '335 patent or any other claim of the '335 patent, including through its making, use, sale or offer for sale in, or importation into the United States of the Accused Products.

55. For example, none of the Accused Products referenced in the Parallel Networks Licensing Complaints perform, or have performed, a computer-implemented method for "transferring a request from an HTTP-compliant device to a selected one of a plurality of page servers that can each process the request, said selected page server receiving said request and releasing said HTTP-compliant device to process other requests wherein said transferring step further includes the steps of: intercepting said request at said HTTP-compliant device; and selecting said page server from among a plurality of page servers that can each process said request based on dynamic information maintained for each of said plurality of page servers; and transferring said request to said selected page server," a necessary limitation of claim 43.

56. Accordingly, at least for the above reasons, the Citrix Accused Products did not infringe at least claim 43 of the '335 patent, either literally or under the doctrine of equivalents.

57. Citrix also did not contribute to or induce infringement of the '335 patent or otherwise indirectly infringe the '335 patent for at least the reasons stated above and because

there is no direct infringement of the '335 patent, either literally or under the doctrine of equivalents.

58.     As set forth above, an actual controversy exists between Citrix and Parallel Networks Licensing with respect to alleged infringement of the '335 patent, and this controversy is likely to continue. Accordingly, Citrix desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '335 patent.

59.     Pursuant at least to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to Citrix's non-infringement of the '335 patent is necessary and appropriate.

## JURY DEMAND

Citrix hereby demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Citrix requests that the Court grant the following relief:

A.      Enter a judgment declaring that Citrix did not infringe literally or under the doctrine of equivalents any claim of the '554 patent;

B.      Enter a judgment declaring that Citrix did not infringe literally or under the doctrine of equivalents any claim of the '335 patent;

C.      Declare this case exceptional and award Citrix its reasonable costs, expenses, and attorneys' fees under 35 U.S.C. § 285; and

D.      Award Citrix any and all other relief that the Court deems just and proper.

Dated: October 23, 2019

| | |
|---|---|
| **OF COUNSEL** | **DLA PIPER LLP (US)** |
| Michael G. Strapp (*pro hac vice* in process)<br>Safraz W. Ishmael (*pro hac vice* in process)<br>**DLA PIPER LLP (US)**<br>33 Arch Street, 26th Floor<br>Boston, MA  02110-1447<br>Telephone:  (617) 406-6031<br>michael.strapp@dlapiper.com<br>safraz.ishmael@dlapiper.com | /s/ Denise S. Kraft<br>Denise S. Kraft (DE Bar No. 2778)<br>Brian A. Biggs (DE Bar No. 5591)<br>Erin E. Larson (DE Bar No. 6616)<br>1201 North Market Street, Suite 2100<br>Wilmington, DE  19801<br>Telephone:  (302) 468-5700<br>Facsimile:   (302) 394-2341<br>denise.kraft@dlapiper.com<br>brian.biggs@dlapiper.com<br>erin.larson@dlapiper.com<br><br>*Attorneys for Citrix Systems, Inc.* |